IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LYNETTE R. JACKSON,** | |
| **Plaintiff,** | |
| v. | Case No. 20-cv-413-SPM |
| **AMERICAN WATER CO.,** | |
| **Defendant.** | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment and supporting Memorandum of Law filed by Defendant, American Water Works Service Company, Inc., incorrectly named as American Water Co. ("American Water") (Docs. 81, 82). For the reason's set forth below, the Court **GRANTS** the Motion for Summary Judgment.

This action arises from the employment of Plaintiff Lynette R. Jackson ("Jackson") at American Water (Doc. 1). In the second amended complaint, Jackson alleged violations of Title VII of the Civil Rights Act ("Title VII") on the basis of race and color (Doc. 31). Specifically, Jackson asserted that the alleged discriminatory conduct included retaliation, and ultimately resulted in the termination of her employment. (*Id*.) Jackson also raised claims under the Americans with Disabilities Act ("ADA") (*Id*.).

## FACTUAL BACKGROUND

Within its Motion for Summary Judgment, American Water set forth its factual allegations, breaking it down into several sections (Doc. 49). In accordance with Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure, American Water cited to particular

portions of the record to support its contention that each and every fact alleged was material and undisputed (*Id.*). Furthermore, American Water provided to Jackson, a *pro se* litigant, the requisite Notice of the filing of its Motion for Summary Judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure (Doc. 87). This notice set forth the particular procedures necessary in summary judgment proceedings and advised that,

> "This Rule provides that any factual assertion or statement made in the movant's affidavits and/or other documentary evidence will be taken as true by the Court *unless* the non-movant contradicts the movant with counter-affidavits and/or other documentary evidence." (*Id*); *see* Fed. R. Civ. P. 56(c).

Jackson addressed summary judgment on July 25, 2022 with a filing (Doc. 97). Although the filing indicated, "Plaintiff, Motion for Summary Judgment", and was originally docketed as Plaintiff's Motion for Summary Judgment, this Court only accepted it as plaintiff's response to American Water's Motion for Summary Judgment for two reasons (Doc. 98). First, this Court is constrained to note that the dispositive motion deadline had passed on June 17, 2022, which was more than a month before plaintiff's purported motion was filed. Second, this Court points out that the parties (including Jackson) were advised via docket entry 92 on June 23, 2022, that "any response to [American Water's] Motion for Summary Judgment shall be filed on or before **July 25, 2022**", which was the date of filing of plaintiff's purported motion.

In the "response", Jackson did not comply with the Rule 56 provisions set forth *infra* (Doc. 97). Instead, she restated her prior allegations in a non-sensical and unsupported diatribe (*Id.*).

As such, and in accordance with Rule 56(e)(2), this Court may consider the facts set forth by American Water as undisputed for purposes of this motion. Nevertheless, the Court is still obligated to ensure that the evidence submitted by American Water properly substantiates its assertions of entitlement to summary judgment. Fed. R. Civ. P. 56(e)(3). Indeed, the [movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012).

The following is a summary of the facts alleged by American Water[1]:

American Water is a water and waste utility company headquartered in Camden, New Jersey. In 2002, Jackson began working for American Water at its customer service call center in Alton, IL as a customer service representative. Jackson's employment was governed, in part, by a Collective Bargaining Agreement ("CBA") between American Water and the Utility Workers Union of America, Local 640 ("Union). In or around 2013, Jackson transferred from her role as a customer service representative to a billing specialist, where she was tasked with providing billing services and responding to inquiries from American Water customers.

During Jackson's employment, American Water maintained a Code of Ethics and other policies that prohibited retaliation, discrimination, and bullying. American Water employees who experienced or suspected any violations of these policies were directed to contact either their manager, Human Resources, the Compliance and Ethics Department, a member of the Legal Department, or the Ethics Helpline. American

---

[1] These facts are limited to those facts which would be admissible at trial and which are adequately supported in the Motion for Summary Judgment and are material to the issues in this case.

Water also implemented policies regarding respect and dignity in its workplace, and Jackson admitted she was aware of the policies and methods for report any violations.

American Water maintained attendance requirements for all its employees, *to wit*: American Water employees were expected to be at work on time, unless approved to be absent. Employees with four or more unexcused absences were subject to discipline, including discharge. When employees anticipated a need for a leave of absence, American Water required they communicate the request for leave to their immediate supervisor, as well as American Water's third-party administrator, 'The Hartford'. Once the need for leave is requested, the employee's supervisors will coordinate with The Hartford and American Water's leave of absence coordinators regarding the leave and return to work. Disability benefits and terms for union employees are governed by the applicable CBA, as well as health and welfare benefits. When anticipating a return to work from leave, the employee must provide a return to work certificate clearing them for duties. Disability benefits and terms for union employees are governed by the applicable CBA, along with American Water's health and welfare benefits. Jackson's CBA offered a maximum of fifty-two (52) weeks of short-term disability benefits. Union employees were not offered long-term disability benefits.

In 2016, American Water terminated for violations of the attendance policy. In May 2016, the Union filed a grievance on behalf of Jackson after her termination. The grievance was settled in December 2017 when American Water agreed to reinstate her in exchange for a withdrawal of the grievance. The terms of the agreement are confidential.

In January 2018, Jackson was reinstated in her former role as a billing specialist. Upon her return to work, Jackson was provided over two weeks of retraining on the essential functions of her job, which included shadowing other employees, classroom training, and access to online training materials and training aids. According to Key Performance Indicators ("KPI")[2], Jackson's performance declined despite the retraining. Three months after her return, Jackson was notified that her performance was unsatisfactory, and on July 19, 2018, she was placed on a 90 day Performance Improvement Plan ("PIP"). Jackson's PIP was set up in three 30-day increments and created an action plan to improve her performance, which included additional training, which she claimed helped.

In August 2019, Jackson filed a Charge of Discrimination with the Illinois Department of Human Rights and the EEOC, claiming she was discriminated against because of her race and was retaliated against because she was reinstated after her discharge grievance was overturned. The charge indicated the conduct took place between June 1, 2018 and August 20, 2019 and was for race discrimination and retaliation.

In October 2019, Jackson applied for short-term disability ("STD") benefits due to medical reasons. Jackson's STD benefits were approved on October 17, 2019 through October 25, 2020, so she began a leave of absence. On December 6, 2019, Jackson returned to work, but left after a partial-day at American Water, and then she remained on leave receiving STD benefits for the maximum allowed fifty-two (52) weeks, which had begun on October 17, 2019 and was not reset on December 6, 2019.

---

[2] KPI scores are provided as a productivity percentage rate, with 100 considered excellent.

On October 20, 2020, American Water sent Jackson a notice of the imminent exhaustion of the STD benefits on October 25, 2020. American Water requested Jackson confirm her availability to return to work on October 26, 2020, with or without reasonable accommodations. The letter advised Jackson that if she was seeking accommodation under the ADA, she needed to have her health care provider complete a medical certification establishing the need. American Water provided Jackson until November 4, 2020 to either return to work or seek additional leave as an accommodation, and Jackson was advised if she did not comply by November 4, 2020, her employment with American Water would be terminated.

On October 27, 2020, Jackson requested to return to work on November 9, 2020, American Water agreed to this request provided Jackson supply a medical release from her health care provider. On November 10, 2020, Jackson sent an e-mail to American Water advising she was unable to return to work and had no estimated return date.

As of November 13, 2020, Jackson had failed to provide American Water with a release from a health care professional that she was able to return to work or any request for an accommodation for continued leave. Jackson had fifteen consecutive absences that began on October 25, 2020 that were considered unexcused and unapproved, so American Water notified her of her termination in accordance with their attendance policy for having more than four unexcused absences. Jackson admits she did not return to work for American Water and only worked a portion of a day over the previous 52 weeks while receiving her STD benefits.

## PROCEDURAL HISTORY

On February 25, 2020, Jackson filed her complaint against American Water, albeit in the Eastern District of Missouri (Doc. 1). On April 20, 2020, the Eastern District provisionally granted *in forma pauperis ("IFP")* status and transferred this action to this Court (Doc. 5). On June 12, 2020, Jackson's IFP status was permanently granted, even though no preliminary review was conducted of the complaint (Doc. 11). American Water filed a motion to dismiss, which was granted without prejudice and Jackson was also granted leave to amend (Doc. 30).

On February 11, 2021, Jackson filed her amended complaint (Doc. 31). On March 3, 2021, American Water filed a motion to dismiss. Shortly thereafter, Jackson was advised that any response to the motion was due or on before April 5, 2021 (Doc. 36). On April 12, 2021, an Order to Show Cause was entered as Jackson had not responded to the pending motion to dismiss (Doc. 38). On April 26, 2021, Jackson filed her response, and on June 1, 2021, this Court denied the aforementioned motion to dismiss, finding that Jackson had pled enough to state the following claims: (1) Retaliation under Title VII of the Civil Rights Act of 1967; (2) Race and/or national origin discrimination under Title VII of the Civil Rights Act of 1967 and 42 U.S.C. §1981; and, (3) Discrimination under the Americans with Disabilities Act of 1990 (Docs. 39, 40).

On June 17, 2021, this case was assigned CJRA Track B with a final pretrial conference setting on June 20, 2022 and a presumptive jury month of July 2022 (Doc. 42). On July 19, 2021 a scheduling order was entered regarding the handling of discovery and providing a deadline of March 4, 2022 for the filing of dispositive motions (Doc. 34). On November 16, 2021 and November 19, 2021, the Court received letters

from Jackson regarding perceived discovery issues (Docs. 47, 48). At a December 1, 2021 status hearing, the parties advised the Court of ongoing discovery delays and were Ordered to prepare a revised Scheduling Order by December 22, 2021 (Doc 50). On December 20, 2021, the amended report was accepted and the final pretrial setting was changed to September 12, 2022 with jury trial presumptively scheduled in October 2022 (Doc. 53). The amended Order extended the discovery deadline to 5/6/2022 and the dispositive motion deadline to 6/3/2022 (*Id.*). On May 24, 2022, the dispositive motion deadline was extended to June 17, 2022[3] (Doc. 76).

On June 17, 2022, American Water its motion for summary judgment and supporting memorandum of law (Docs. 81, 82). On June 22, 2022, American Water filed a notice of filing pursuant to Rule 56 of the Federal Rules of Civil Procedure, regarding the motion for summary judgment that advised Jackson, as a *pro se* litigant, of the procedures and potential pitfalls of Rule 56 (Doc. 51). Jackson's response was due on July 25, 2022; on which date plaintiff filed a motion, which was deemed to be response (Doc. 97).

On August 8, 2022, American Water filed a reply, claiming the reply was necessary to address the deficiencies in Jackson's response (Doc. 99). Within its reply, American Water argued that even though Jackson was *pro se*, she was still required to comply with procedural rules, including Local Rules and the Federal Rules of Civil Procedure (*Id.*). American Water also emphasized that Jackson has not shown any evidence that supports her claims (*Id.*)

---

[3] The discovery deadline was not extended and remained May 6, 2022. Accordingly, discovery has been closed in this case for more than 3 months (as of August 22, 2022).

## LEGAL STANDARD

**Summary Judgment – Rule 56 of the Federal Rules of Civil Procedure**

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990)).

Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby,* 477 U.S. 242, 252 (1986). Indeed, the nonmovant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311 (7th Cir. 1995) (*citing Serfecz v. Jewel Food Stores*,

67 F.3d 591 (7th Cir. 1995); *Greater Rockford Energy and Technology Corp. v. Shell Oil Co.,* 998 F.2d 391 (7th Cir. 1993)).

### Local Rules – Rule 7.1 of the Southern District of Illinois

According to Local Rule 7.1(e) of the U.S. District Court for the Southern District of Illinois, "Any brief in support of or in opposition to a motion for summary judgment shall contain citation to relevant legal authority and to the record, together with any affidavits or documentary material designated pursuant to Federal Rule of Civil Procedure 56 supporting the party's position." (SDIL-LR 7.1(e)). Additionally, Local Rule 7.1(d) states in pertinent part that:

> "Allegations of fact not supported by citation, may, in the Court's discretion, not be considered." (SDIL-LR 7.1(d)).

### *Pro Se* Filings

While it is true that *pro se* pleadings are liberally construed; leniency toward a *pro se* litigant is circumscribed. *See Greer v. Bd. Of Educ.,* 267 F.3d 723, 727 (7th Cir. 2001) (courts are not "obliged ... to scour the record looking for factual disputes" to rescue a *pro se* litigant from losing summary judgment). *Pro se* status does not serve as a license to ignore the Federal Rules of Civil Procedure or the Local Rules. *See Members v. Paige,* 140 F.3d 699, 702 (7th Cir. 1998) ("[procedural] rules apply to uncounseled litigants"); *Downs v. Weslphal,* 78 F.3d 1252, 1257 (7th Cir. 1996) ("*pro se* litigants are not entitled to a general dispensation from the rules of procedure"). Furthermore, although severe, the Seventh Circuit has consistently upheld district judges' discretion to require strict compliance with local rules. *Coleman v. Goodwill Indus. of Se. Wis., Inc.,* 423 Fed.Appx. 642, 643 (7th Cir. 2011) ("Though courts are solicitous of *pro se*

litigants, they may nonetheless require strict compliance with local rules); *Wilson v. Kautex, Inc.*, 371 Fed.Appx. 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a *pro se* litigant.") (citation omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure.").

## ANALYSIS

I.  **Retaliation under Title VII of the Civil Rights Act of 1967**

In general, Title VII forbids employer retaliation where an employee "has opposed any practice made an unlawful employment practice" or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII, 42 U.S.C. § 2000e–3(a).

Although the Court noted that Jackson's amended complaint was "not a model of clarity", it determined that she could proceed with her cause of action and divided Jackson's claims into counts, including Count I as a claim for retaliation under Title VII of the Civil Rights Act of 1967 (Doc. 28). In this count, the Court inferred that Jackson claimed American Water retaliated against her by the subsequent termination because it was not happy with the CBA grievance and settlement authorizing her to return to work (Doc. 31).

There are two different ways to make a *prima facie* showing of retaliation, the direct method and the indirect method. *Boss v. Castro,* 816 F.3d 910 (7th Cir. 2016). Under both methods, Jackson fails.

A Title VII plaintiff proceeding under the direct method of retaliation must show that (1) she engaged in protected activity; (2) she suffered a materially adverse

employment action; and (3) there was a causal link between the protected activity and the adverse action. *Harden v. Marion County Sheriff's Dept.*, 799 F.3d 857, 861-862 (7th Cir. 2015) (citing *Colman v. Donahoe,* 667 F.3d 835, 845 (7th Cir. 2012). To prove retaliation under the indirect method, a plaintiff must show that (1) she engaged in protected activity; (2) she suffered a materially adverse employment action; (3) she was meeting his employer's legitimate expectations; and (4) she was treated less favorably than similarly-situated employees who did not engage in protected activity. *Harden,* 799 F.3d at 862 (citing *Argyropoulos v. City of Alton,* 539 F.3d 724, 733 (7th Cir.2008)).

The first two elements of proof are the same under both the direct or indirect methods. While it is clear that Jackson engaged in protected conduct by being a member of CBA that filed a grievance on her behalf and that she later suffered a materially adverse employment action, i.e. termination, she still cannot prevail under either scenario as she cannot prove the remaining elements. Under the direct method, Jackson cannot show a causal connection between the filing of the grievance with her subsequent termination. Furthermore, under the indirect method, she cannot show that she was meeting job expectations and was treated less favorably than similarly situated employees.

While not conceding all the elements have been established under one of the methods, even if they were, he would still fail. Under both methods, once a *prima facie* case is established, a presumption of retaliation is triggered, and the burden shifts to the employer to articulate some legitimate, nonretaliatory reason for its action. *Id*. (citing *Coleman,* 667 F.3d at 845). American Water can articulate that the

subsequent termination was due to a failure to comply with the terms of the STD, which a non-pretextual reason.

## II. Race and/or National Origian Discrimination under Title VII of the Civil Rights Act or 1967 and 42 U.S.C. §1981

This Court determined that Count II of Jackson's Amended Complaint was race and/or national origin in violation of Title VII of the Civil Rights Act of 1967 and 42 U.S.C. §1981 (Doc. 40). Title VII prohibits employers from discriminating against employees because of their race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1).

The test for proving discrimination "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action". *David v. Board of Trustees of Community College District No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) *citing Ortiz v. Werner Enterprises, Inc.,* 834 F.3d 760, 765 (7th Cir. 2016). Generally speaking, the plaintiff has the initial burden of establishing that: (1) he is a member of a protected class, (2) he performed reasonably on the job in accord with his employer['s] legitimate expectations, (3) despite his reasonable performance, he was subjected to an adverse employment action, and (4) similarly situated employees outside of his protected class were treated more favorably by the employer." *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 234 (7th Cir. 2014), *overruled on other grounds by Ortiz*, 834 F.3d at 765. "If the plaintiff satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's

explanation is pretextual." *Id.*

There is no question that Jackson, an African American female, is a member of at least one protected class, and that she was terminated, which is an adverse employment action. However, Jackson has not shown that she was performing reasonably, nor has she shown that any similarly situated employee outside of her protected class was treated more favorably.

Assuming arguendo that Jackson can meet the burden, Count II would still fail. American Water has articulated legitimate, nondiscriminatory reasons for what transpired. Jackson did not comply with the STD protocol and did not return to work. American Water had an attendance policy that included progressive discipline and emphasized that "An employee may not return to work without appropriate documentation." (Doc. 82-1, p. 276, 277). Additionally, Jackson never provided any physician's release and in essence, abandoned her job after failing to return at the end of her STD (*Id.*).

In the employment discrimination context, summary judgment is warranted where "the evidence, interpreted favorably to the plaintiff, could not persuade a reasonable jury that the employer had discriminated against the plaintiff." *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1570 (7th Cir. 1989). Because Jackson is unable to prove a *prima facie* case of discrimination; summary judgment is clearly appropriate.

### III.   Discrimination under the Americans with Disabilities Act of 1990

This Court determined that Count III of Jackson's Amended Complaint alleged discrimination under the ADA (Doc. 40). "The ADA prohibits an employer from discriminating against a qualified person on the basis of disability." McCurry, 942 F.3d

at 789 (citing 42 U.S.C. § 12112(a)). To prove a violation of this provision, a plaintiff must show "(1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 335 (7th Cir. 2019), *reh'g denied* (Dec. 20, 2019).

In this case, Jackson has not satisfied any of the requisite elements, much less even one. She has not proven a disability; she has not shown that she is otherwise qualified to person the functions of her job, with or without reasonable accommodations; nor has she shown that any adverse action was caused by her alleged disability.

With respect to the ADA, summary judgment for a defendant is appropriate when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Given the facts before the Court, summary judgment is clearly warranted on Count III of the amended complaint.

Notwithstanding the forgoing, Jackson's claim under the ADA is also precluded as he did not exhaust his administrative remedies. Under the ADA, "a plaintiff filing suit in federal court may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations." *See Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) . "Claims are 'like or reasonably related' when (1) there is a reasonable relationship between the allegations in the charge and the claims in the complaint and (2) the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Id.* ). "The charge and complaint must, at

minimum, describe the same conduct and implicate the same individuals." *Id.* (emphases in original).

In her Charge of Discrimination, Jackson stated,

> "I believe I have been discriminated against due to my race, African American and retaliated against for participating in protected activity, in violation of Title VII of the Civil Rights Act ..." (Doc. 18-1).

While the charge named American Water as respondent, so clearly implicated the same party, the same conduct is not implicated. The EEOC charge only mentions Title VII and instances where Jackson claims racial discrimination and retaliation. At no point does the EEOC charge refer to the ADA and/or any alleged disability.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment filed by Defendant, American Water Works Service Company, Inc., incorrectly named as American Water Co. This action is **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly. As such, all pending court dates are cancelled and terminated.

**IT IS SO ORDERED.**

**DATED: August 26, 2022**

/s/ Stephen P. McGlynn
**STEPHEN P. McGLYNN**
**U.S. District Judge**